UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

IKELENE BOH,

        Plaintiff,

v.

ANDREW SAUL,

        Defendant.

Case No. 2:20-cv-00350-EJY

**ORDER**

Plaintiff Ikelene Boh ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), respectively. For the reasons stated below, the Commissioner's decision is reversed in part, and this case is remanded for further proceedings consistent with this Order.

## I.  BACKGROUND

On July 21, 2016, Plaintiff filed applications for DIB and SSI, alleging onset of disability beginning January 1, 2016. Administrative Record ("AR") 239-254. The Commissioner denied Plaintiff's claims by initial determination on November 22, 2016, and again upon reconsideration on March 22, 2017. AR 89-92. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 140-41. After conducting a hearing on March 1, 2019 (AR 42-60), ALJ Norman L. Bennett issued his determination that Plaintiff was not disabled on March 18, 2019. AR 20-31. On March 27, 2019, Plaintiff requested that the Appeals Council review the decision by the ALJ. AR 236-238. On December 18, 2019, the Appeals Council denied Plaintiff's request for review. AR 1-3. Upon denial of Plaintiff's request for review by the Appeals Council, the ALJ's March 18, 2019 decision became the final order of the Commissioner. 42 U.S.C. § 405(h).

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 4095(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)    the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R.

§§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id.*

*Id.* at 1098–99 (internal alterations omitted).

B.     Summary of ALJ's Findings

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since January 1, 2016, the alleged onset date of disability. AR 22. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "degenerative joint disease of the SI joint; degenerative disc disease; Fibromyalgia; Lupus; state post remote intestinal surgery; left rotator cuff tear, status post-surgical repair." *Id.* He also determined that "claimant's medically determinable mental impairments of anxiety; depression; [post-traumatic stress disorder] ("PTSD"), considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 23.

In preparation for step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, the claimant cannot climb ladders, ropes or scaffolds and she cannot reach above shoulder level with her left arm. The claimant is limited to simple repetitive tasks, and reasoning level 2-3.

AR 25.

At step four, the ALJ determined, based on the testimony of a Vocational Expert, that Plaintiff was "capable of performing past relevant work as a Cashier (DOT: 211.462-010, SVP 2, Unskilled, Light). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR 30.

The ALJ concluded that "the claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision." *Id.*

---

[1]     "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

C.      Summary of Medical Evidence[2]

### 1.      Dr. Cruvant's Examinations and Opinion

On February 2, 2016, Plaintiff met with her primary care physician, Ethan Cruvant.  AR 363. She complained of left shoulder and neck pain.  Dr. Cruvant's physical exam revealed decreased range of motion in the left arm secondary to pain, but no significant muscle tenderness, normal grasp, and fairly normal range of motion in the right arm.  *Id*.  He determined that he "would only consider fairly conservative measures" for her shoulder pain.  AR 364.  Plaintiff also complained of anxiety. AR 363.  Dr. Cruvant observed that Plaintiff "gets emotional discussing problems" and was crying at the appointment.  *Id*.  He prescribed Celexa and Lorazepam for Plaintiff's anxiety and depression and recommended counseling.  *Id*.

Plaintiff saw Dr. Cruvant again on June 24, 2016, complaining of pain in her back, shoulder, and "other joints."  AR 346.  On exam, Plaintiff showed "some discomfort with range of motion of shoulders" and "some discomfort with palpation of back" in "both the muscular and bony areas." *Id*.  Cruvant prescribed Neurontin for her chronic back pain.  AR 347.  Plaintiff also complained that the Celexa she was prescribed made her feel worse, but that the Lorazepam was helpful.  She reported she still suffered from "significant panic problems."  AR 346.  Dr. Cruvant observed that Plaintiff volunteers with hospice, "is feeling better," and has a significant other.  *Id*.  He continued Lorazepam for anxiety and continued recommending counseling.  AR 347.

On May 4, 2017, Dr. Cruvant provided a "physical assessment" statement diagnosing Plaintiff with systemic lupus, neuropathy, a tailbone fracture, and shoulder pain.  AR 432-33.  Dr. Cruvant opined that Plaintiff would miss more than 4 days of work per month; could only lift 10 pounds; would need to take unscheduled breaks "constantly every five minutes" and that the break would last an hour before she could return to work; could sit only 1-2 hours and stand/walk zero hours; would need to recline or lie down in excess of the typical breaks associated with an 8-hour work day; and has limitations in doing repetitive reaching, handling, or fingering.  *Id*.

---

[2]      The Court does not attempt to summarize the entirety of the 900+ page administrative record in this case.  The Court instead highlights records and findings most relevant to the analysis below.

### 2. Dr. Holland's Examination and Opinion

Stephanie Holland, PsyD, examined Plaintiff on November 3, 2016.  AR 417-22.  Dr. Holland noted that Plaintiff was diagnosed with PTSD in 2002 and takes Xanax nightly and as needed during the day.  AR 419-20.  She attended therapy for several years but stopped attending after going through a divorce.  AR 420.  Dr. Holland diagnosed Plaintiff with PTSD and opined that Plaintiff can understand, remember, and carry out an extensive variety of complex instructions, detailed instructions, and simple one- or two-step instructions; can interact appropriately with supervisors and co-workers; and can maintain concentration and attention sufficient to carry out an extensive variety of complex instructions, detailed instructions, and simple instructions.  AR 422.  Dr. Holland also opined that Plaintiff could not consistently interact appropriately in public due to her anxiety symptoms.  *Id*.

### 3. State Agency Non-Examining Physician Opinions

Dr. Ankin, a non-examining state agency physician, issued an opinion on Plaintiff's physical RFC on November 22, 2016.  AR 61-74.  After reviewing the evidence submitted at that time, Dr. Ankin determined that Plaintiff would be limited to occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 points, could stand, walk, and sit about 6 hours in an 8-hour workday, and had no limitations in her ability to push and/or pull.  AR 68.  Dr. Ankin also determined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  After reviewing medical records from 2016, and Plaintiff's subjective complaints, Dr. Ankton determined that a "medium RFC [s]eems most appropriate at this time."  AR 69.

Dr. Torigoe conducted a review of Plaintiff's mental impairments on November 22, 2016.  AR 61-74.  He found that Plaintiff had mild restrictions of activities of daily living, moderate difficulties maintaining social functions, mild difficulties maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  AR 66.  This doctor also noted that Plaintiff's reported intensity and impact of her mental impairments "is not supported by all objective medical and non-medical findings."  AR 68.  Dr. Torigoe noted that Plaintiff was not currently seeking outpatient treatment for her anxiety, and that she was volunteering "1-2 days a week, despite her statements . . . which noted she doesn't go anywhere on a regular basis."  *Id*.  Dr. Torigoe gave Dr.

Holland's opinion "great weight" because it was consistent with objective findings. *Id*. Dr. Torigoe opined that Plaintiff had no understanding and memory limitations and no sustained concentration and persistence limitations. AR 70. Dr. Torigoe opined that Plaintiff's ability to interact appropriately with the general public was moderately limited and found no other social interaction limitations. *Id*. He also opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in work settings but had no other "adaptation limitations." *Id*.

On reconsideration of Plaintiff's application, Drs. Berkowitz and Lokshin received additional medical evidence from 2017. AR 93-106. The physicians determined that "a medium RFC is confirmed and mental is non severe." AR 98. Dr. Berkowitz, Psy.D., assessed that Plaintiff had mild limitations to her ability to interact with others; concentrate, persist, or maintain pace, and adapt or manage herself. AR 99. He determined that "there is no evidence of severe psychiatric signs or symptoms secondary to mental impairments or indication that more intensive psychiatric treatment is warranted or has been recommended." AR 100. Dr. Lokshin confirmed the medium RFC assessment and restrictions made in the initial report by Dr. Ankin. AR 101-02.

### 4. Additional Medical Evidence

Plaintiff submitted additional medical records dated after the opinions summarized above. The Court discusses them to two parts: those relating to Plaintiff's physical ailments, and those relating to her mental impairments.

#### a. Physical Records

Plaintiff sought treatment from Dr. Colin Rock at the Nevada Comprehensive Pain Center approximately two times a month from August 2017 through January 2019. *See generally* AR 595-699; 708-28; 807-40; 871-84. At Plaintiff's first appointment on August 28, 2017, physical examination of her cervical and lumbar spine revealed tenderness to palpation at the bilateral paracervical muscle groups and facet columns, severely decreased cervical range of motion, decreased sensation in her right arm, weak strength in the bilateral upper extremities, tenderness to palpation over bilateral paralumbar muscle groups and facet columns, decreased lumbar range of motion, and normal sensation, strength, and reflexes in the bilateral lower extremities, with negative spurling and straight leg raise tests. Her left shoulder exam revealed severely restricted range of

motion, tenderness to palpation along the joint line, and rotator cuff weakness affecting all four muscles.  Plaintiff's hip exam revealed normal range of motion and tenderness to palpation along the greater trochanters.  AR 696-97.  These physical exam findings remained largely unchanged throughout Plaintiff's visits with Dr. Rock.[3]  Throughout Plaintiff's course of treatment with the Nevada Comprehensive Pain Center, Dr. Rock administered multiple cervical facet medial branch blocks, cervical radiofrequency denervations, and sacroiliac joint ("SI") joint and trochanteric bursa injections to manage Plaintiff's pain in her spine, hips, and joints.[4]  The injections provided between 40% and 100% benefit to Plaintiff's pain for varying lengths of time.

On September 1, 2017, Plaintiff got bilateral hip and lumbar spine x-rays.  The bilateral hip x-ray showed "very mild degenerative changes . . . in the right SI joint" and "normal-appearing bilateral hips."  AR 508.  The lumbar spine x-ray showed mild dextroscoliosis of the lumbar spine with "mild to moderate multilevel degenerative disc and degenerative joint disease," and left-side nephrolithiasis.  AR 509.  On September 12, 2017, Plaintiff underwent an MRI of her left shoulder, which showed a "supraspinatus tendon high-grade bursal-sided footprint partial tear measuring almost 1 cm in AP dimension without significant medial retraction" and "mild infraspinatus tendinosis, posterior superior labra tear at the 11 to 12 position."  AR 517.  An October 19, 2017 chest CT showed mild levoscoliosis of the thoracic spine.  AR 524.

On January 11, 2018, Plaintiff received a corticosteroid injection in her left shoulder because her pain was interfering with her daily activities.  AR 777-78.  On February 7, 2018, Plaintiff received left shoulder chronic rotator cuff surgery.  AR 796.  Following surgery, she reported

---

[3]     *See*, *e.g.*, AR 685-86 (September 25, 2017 appointment); AR 680-81 (October 19, 2017); AR 667-68 (December 1, 2017); AR 655-56 (January 3, 2018); AR 650–51 (January 31, 2018); AR 645-46 (February 14, 2018); AR 641 (February 28, 2018); AR 635 (March 14, 2018); AR 623 (April 11, 2018); AR 618 (April 30, 2018); AR 609 (May 30, 2018); AR 598 (June 28, 2018); AR 720 (July 25, 2018); AR 711 (August 22, 2018); AR 831 (August 28, 2018); AR 825-26 (September 19, 2018); AR 816-17 (October 17, 2018); AR 810-11 (October 30, 2018); AR 880-81 (November 28, 2018); AR 874-75 (January 2, 2019).

[4]     *See* AR 688 (September 11, 2017—bilateral cervical facet medial branch block at C4-C7); AR 674 (October 23, 2017—right cervical radiofrequency denervation at C4-C7); AR 670 (November 6, 2017—left cervical radiofrequency denervation at C4-C7); AR 658 (December 18, 2017—bilateral SI joint and trochanteric bursa infections); AR 625 (April 2, 2018—bilateral SI joint and trochanteric bursa injections); AR 611 (May 14, 2018—right cervical radiofrequency denervation at C4-C7); AR 601 (June 4, 2018—left cervical radiofrequency denervation at C4-C7); AR 714 (August 13, 2018—bilateral SI joint and trochanteric bursa injections); AR 819 (October 8, 2018—bilateral SI joint and trochanteric bursa injections); AR 877 (November 28, 2018—recommending further cervical radiofrequency denervations); AR 874-75 (January 2, 2019—recommending further SI joint and trochanteric bursa injections).

reduced pain and full range of motion in her left shoulder. However, on February 22, 2018 Plaintiff reported that her pain increased since she received nasal surgery, during which her arm was placed in an uncomfortable position. AR 785. Plaintiff was referred to physical therapy for her left shoulder. *Id.*

While Plaintiff was seeing Dr. Rock at the Nevada Comprehensive Pain Center, she was also being seen by doctors at Personal Medical Care for various ailments. All of the progress notes from Plaintiff's appointments with Personal Medical Care show normal musculoskeletal and neurological functioning.[5]

On September 11, 2018, Plaintiff received an MRI of her cervical spine, which showed minimal reversal cervical lordosis at C4-C5; minimal subluxation of C3 and C4; some facet overgrowth and uncovertebral overgrowth results in moderate right foraminal stenosis; narrowing at C4-C5 and C5-C6; uncovertebral overgrowth at C5-C6 resulting in moderate left greater than right foraminal stenosis; mild bilateral foraminal stenosis at C4-C5; disc height narrowing with small disc bulge at C6-C7; and mild foraminal narrowing.[6] AR 766-767. The results were not compared to Plaintiff's previous cervical spine CT, taken November 16, 2016, which showed severe C4-C5 and C5-C6 degenerative disk disease; mild to moderate C6-C7 degenerative disk disease; moderate right C3-C4 neural foraminal stenosis; moderate to severe bilateral C5-C6 neural foraminal stenosis; and mild bilateral C6-C7 neural foraminal stenosis. AR 493.

### b. Psychological Records

From September 6, 2017 through October 24, 2018, Plaintiff sought treatment for her psychological ailments at Psychiatric Solutions Clinic. *See* AR 462-84; 700-07; 798-806. Throughout her treatment, Plaintiff's exams show variable results. Her condition is generally listed as depressed and anxious, although it is regularly noted that she presents as stable, calm, and

---

[5] *See* AR 558 (September 11, 2017 appointment); AR 552 (September 27, 2017); AR 546 (October 18, 2017); AR 540 (November 29, 2017); AR 534 (December 12, 2017); AR 747 (January 8, 2018); AR 744 (February 26, 2018); AR 741 (March 13, 2018); AR 738 (May 4, 2018); AR 735 (August 29, 2018); AR 856 (October 25, 2018); AR 853 (November 19, 2018).

[6] Plaintiff also received an x-ray of her left elbow, where she began experiencing pain in 2018. Plaintiff does not raise the relatively new issues with her left elbow as an issue in this appeal, and the Court therefore does not detail the related testing and treatment.

pleasant.[7]  Her concentration is consistently noted as pre-occupied or easily distracted.[8]  It is occasionally noted that Plaintiff suffers from auditory and visual hallucinations, circumstantial thought processes, and persecutory and paranoid delusions.[9]  However, her insight and judgment are consistently noted as fair, with normal perception, no memory impairments, appropriate thought process, appropriate affect, and intact funds of knowledge.[10]

On November 30, 2018, Plaintiff transferred care to Desert Behavioral Solutions, and treated there through January 2019.  On exam, Plaintiff was generally noted to be well-groomed with no distress and able to establish a good rapport and good eye contact.  She was regularly calm, cooperative, and compliant with questioning.  She was noted to have good insight and judgment, and normal thought process and content.[11]  She was occasionally sad and dysthymic with a fast rate, tone, and volume of speech.  AR 939.  Plaintiff was taking Lamictal, Buspar, Seroquel, and Prozac for her psychiatric ailments.  AR 945.

D.    Issues Presented

Plaintiff contends the ALJ erred by (1) failing to discharge his duty to develop the record and obtain an updated medical opinion (ECF No. 30 at 15); (2) failing to properly explain the weight granted to Dr. Cruvant, Plaintiff's treating physician (*id.* at 19); and (3) improperly determining that Plaintiff did not have a severe mental impairment at Step 2 of the sequential evaluation (*id.* at 23).

### 1.    The ALJ erred by rejecting Dr. Cruvant's opinion.

In accordance with Social Security regulations, courts have "developed standards that guide our analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal citation omitted).  Courts "distinguish among the opinions of

---

[7]    *See* AR 483 (September 6, 2017—condition listed as stable); AR 480 (September 15, 2017—depressed, anxious); AR 477 (October 5, 2017—depressed, anxious); AR 474 (November 7, 2017—depressed, anxious); AR 471 (December 6, 2017—depressed, anxious); AR 468 (January 4, 2018—exams shows calm and pleasant; anxious but stable condition); AR 465 ( March 7, 2018—depressed, anxious, manic); AR 462 (May 28, 2018—depressed, anxious); AR 703 (July 6, 2018—depressed, anxious); AR 700 (August 8, 2018—depressed, anxious); AR 805 (September 7, 2018 – stable); AR 799 (October 24, 2018 – depressed, anxious).

[8]    *See, e.g.*, AR 472 (December 6, 2017); AR 469 (January 4, 2018); AR 466 (March 7, 2018); AR 463 (May 28, 2018); AR 701 (August 8, 2018).

[9]    *See, e.g.*, AR 469, 466, 472.

[10]    *See, e.g.*, AR 472, 469, 466, 463, 701, 719, 806.

[11]    *See* AR 936 (November 30, 2018); AR 939 (January 3, 2019); AR 942 (January 18, 2019); AR 945 (January 31, 2019).

three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). For claims filed before March 27, 2017, as is the case here, "the opinion of a treating physician is [given] greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.92.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (internal citations omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). To satisfy the "substantial evidence" requirement of the specific and legitimate reasons standard, the ALJ should set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Garrison*, 759 F.3d at 1012 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (internal citation and quotation marks omitted). The ALJ can never arbitrarily substitute his own opinion for the opinion of competent medical professionals. *Tackett*, 180 F.3d at 1102–03. An ALJ may properly reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted).

Here, the ALJ did not accord any weight to the opinion of Plaintiff's treating physician, Dr. Cruvant, that Plaintiff "would miss more than 4 days of work per month and that she could only lift

10 pounds, sit for an hour, stand/walk for zero hours, and that she would 'constantly' be off task." AR 27. The ALJ discounted Dr. Cruvant's opinion because it "is not supported by the claimant's record . . . as it basically states the claimant would be bedridden, due to her lupus, neuropathy, tailbone fracture, and shoulder pain." *Id*.

Plaintiff contends that the ALJ committed reversible error when he failed to explain his decision to afford Dr. Cruvant's opinion no weight. She contends that the ALJ "provided no explanation" for his statement that the opinion was not supported by the medical record. ECF No. 30 at 20. Plaintiff further contends that the ALJ's discussion of the medical record generally cannot be viewed to provide that explanation, because the ALJ "d[id] not provide an accurate summary of the objective findings to prove substantial evidence supports his conclusions." *Id*. at 21. Plaintiff points to portions of the medical record that demonstrate limited functioning that the ALJ did not include in his discussion. Plaintiff notes that the ALJ discussed injections Plaintiff received to manage her pain throughout 2017 and 2018, but did not address "the extensive positive findings that would certainly support Dr. Cruvant's opined lifting and upper extremity limitations." *Id*. Instead, the ALJ cited only to the relatively normal exam findings contained in the records from Personal Medical Care, while ignoring Dr. Rock's physical exams, which paints a very different picture of Plaintiff's functioning. *Compare* Personal Medical Care progress notes (AR 530-71; 729-63; 847-62) *with* Nevada Comprehensive Pain Center office treatment records (AR 595-699; AR 708-28; 807-40; 871-84). Plaintiff also takes issue with the ALJ's discussion of September 2018 imaging results, in which the ALJ stated that "cervical degeneration was noted, but no progression from prior radiographs." AR 28. Plaintiff contends that this is inaccurate interpretation of the medical evidence, as no clinician found there was "no progression" from any past imaging result. ECF No. 30 at 22.

The Court agrees that the ALJ did not give specific and legitimate reasons for rejecting Dr. Cruvant's testimony. The Commissioner attempts to point to portions of the record that support the ALJ's decision. But it is the ALJ's responsibility to explain what portions of the record support discounting the opinion of a treating physician. And, even if the Court attempts to read the ALJ's discussion of the record as supportive of his decision to reject Dr. Cruvant's testimony, the ALJ's

discussion was not sufficiently "detailed" or "thorough" to provide substantial evidence for his determination. The ALJ did not discuss the numerous physical examinations demonstrating decreased range of motion, weakness in bilateral upper extremities, positive Fabre and Patrick tests for SI joints, lack of sensation in the right arm or other medical facts. Because the ALJ omits this evidence, instead focusing on "normal" exam results from a different, less specialized doctor, it is unclear whether his assessment that she has no limitations in sitting, standing or walking, and his restriction to 20 pounds of lifting is supported by substantial evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when ALJ ignored portions of the record that supported plaintiff's allegations); *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999) (finding "inaccurate characterization of the evidence" may warrant remand). The ALJ's statement that Plaintiff benefited from pain management does not discuss that, despite any such improvement in pain, the physical exams accompanying those improvements continue to show severely decreased motion and strength and continued complaints of severe pain. Further, the ALJ determined that the new evidence of physical impairments was significant enough to discount the state agency physician opinions that Plaintiff could perform moderate work. He does not sufficiently explain why it supports an RFC of light work, but does not support Dr. Cruvant's more severe findings. The ALJ also does not sufficiently explain why these records support his limitations regarding ropes, ladders, and reaching above the shoulder, but do not support further limitations to Plaintiff's ability to walk, sit, stand or carry over 10 pounds that may have supported an RFC of sedentary work more in line with Dr. Cruvant's opinion.

The Commissioner asks that the Court make "reasonable inferences" that the ALJ's discussion of daily activities implicitly undercut Dr. Cruvant's opinion. ECF No. 34 at 22. But the Court will not perform the leap required to tie the two together. The ALJ does not state that he rejected Dr. Cruvant's opinion, at least in part, because it was inconsistent with Plaintiff's daily activities. And the ALJ's discussion of Plaintiff's daily activities does not necessarily signal an inconsistency that warrants invalidating the entirety of Dr. Cruvant's opinion. The ALJ notes that Plaintiff can "drive, watch TV, shop in stores, sit in the sun . . . and do 'light' housework and laundry." AR 29. He further explains that "the claimant is able to engage in a number of activities,

including performing some chores, shopping, socializing, going out alone, that far exceed the allegations." *Id*. The Court cannot determine whether these minimal daily activities support the RFC that allows for significant sitting, walking, standing, and heavy lifting throughout an 8-hour workday. In short, the ALJ's decision to reject Dr. Cruvant's opinion in its entirety, which would have supported an RFC for sedentary work, is not supported by substantial evidence.

Nor is this error harmless. "An error is harmless only if it is inconsequential to the ultimate disability determination, or if despite the legal error, "the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d at 494. Here, the Court cannot discern the agency's path because the ALJ inadequately addressed more recent medical records that may have supported Dr. Cruvant's opinion, at least to some extent. The Vocational Expert in this case was presented only with hypotheticals restricting Plaintiff to a range of light work, without any restrictions on sitting, walking, or standing. The Court therefore finds that remand is required for the ALJ to reconsider the evidence in this case and determine whether any weight need by given to Dr. Cruvant's opinion.

**2.      The ALJ did not err by failing to develop the record.**

Every medical opinion submitted in this case was authored in late 2016 or early 2017.[12] However, the administrative record contains additional medical records detailing Plaintiff's ailments and treatments from 2017 through January 2019.

When discussing the state agency opinions in his decision, the ALJ accorded them "some evidentiary weight" because they were "not inconsistent with the medical evidence as a whole." AR 29. But the ALF noted that their opinions "that claimant is capable of a reduced range of medium exertion" were rendered by physicians who never met or examined Plaintiff. *Id*. He also noted that "additional records have been admitted into the record since the [agency] physicians rendered their opinions, which fact diminishes the value of the [agency] opinions as this new evidence more accurately reflects the current state of the claimant's impairments." AR 29–30. The ALJ,

---

[12]      Dr. Holland's opinion is dated November 3, 2016. AR 417-23. The agency opinions are dated November 22, 2016 and March 22, 2017. AR 61-74, 93-106. Dr. Cruvant's opinion is dated May 4, 2017. AR 432-33.

considering all the evidence, fashioned an RFC reflecting that Plaintiff could perform a range of light work—a more restrictive RFC than that of the agency opinions.

Plaintiff contends that the ALJ's acknowledgement of evidence post-dating the agency opinions meant that the ALJ found the agency opinions "stale." ECF No. 30 at 15-16. Plaintiff further contends that, because the ALJ gave no weight to Dr. Cruvant's opinion, and because Dr. Holland's opinion was authored "several months prior to" the agency opinions and is therefore also "stale," the ALJ considered virtually no medical opinions when fashioning Plaintiff's RFC.[13]

Plaintiff claims that, in the face of "stale" medical opinions, the ALJ had a duty to develop the record by ordering new medical opinions that accounted for the new medical evidence. ECF No. 30 at 18. Plaintiff states that the ALJ's decision to instead interpret the "raw" medical evidence for himself was inappropriate, because ALJ's must "resist the urge to play doctor" when determining an RFC. *Id*. at 17.

The Commissioner contends that Plaintiff waived this argument because it was not raised at the administrative hearing. *See, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal")); *Findley v. Saul*, 18-cv-341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (rejecting argument that ALJ erred by failing to obtain additional medical opinions in response to new medical evidence, finding the record was not ambiguous or inadequate and noting that plaintiff's counsel stated the record was complete); *Randolph v. Saul,* 18-cv-555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (finding that gap in medical records did not trigger ALJ's duty to develop the record, particularly because plaintiff's attorney stated that the record was complete at hearing); *Patrick v. Berryhill*, No. EDCCV 17-2526-JPR, 2019 WL 1383800, at *7 (finding plaintiff waived argument that ALJ failed to develop the record because it was not raised at the ALJ hearing or before the Appeals Council, relying on Meanel, 172 F.3d at 1115); *Moruzzi v. Astrue*, No. EDCV 11-02040-AJW, 2012 WL 5412106, at *9–10 (C.D. Cal. Nov. 5, 2012) (rejecting duty to develop argument because claimant's attorney stated the record

---

[13]     Plaintiff focuses only on her physical impairments when discussing this argument in her brief, so the Court does the same. The Court discusses the impact of Plaintiff's "staleness" argument on the ALJ's analysis of her mental impairments in its analysis of Plaintiff's argument that the ALJ erred at step two, below.

was complete at ALJ hearing); *Werner v. Astrue*, 09-cv-104-JLT, 2010 WL 2180357, at *8 (E.D. Cal. May 28, 2010) (rejecting argument that ALJ breached a duty to develop the record because the claimant's attorney agreed at the hearing that the record was complete). The Court finds this authority persuasive. At the ALJ hearing, Plaintiff's counsel confirmed that the medical record was complete. Plaintiff has therefore waived her duty-to-develop argument.

Plaintiff contends that she could not have known to keep the record open or seek a new medical opinion because she could not have known what information the ALJ would accept or reject until he rendered his opinion. ECF No. 36 at 2. Plaintiff claims her duty-to-develop arguments is predicated on the ALJ's finding that the agency opinions were "stale"—a finding she could not have known about until the ALJ issued his decision. *Id.* But Plaintiff's argument is predicated on an unsupportable interpretation of the ALJ's decision. The ALJ did not find any medical opinions "stale." Rather, he accorded five medical opinions—four agency opinions and one consulting examiner opinion—some weight, while also discounting the agency portions that were not entirely consistent with more recent medical evidence. When examining Plaintiff's argument without the misleading lens of challenging reliance on a "stale" medical opinion, the Court finds that the gravamen of Plaintiff's argument is really that the ALJ erroneously evaluated the new medical evidence without first ordering additional medical source opinions. Plaintiff's counsel was aware at the hearing that: (1) all medical opinions of record were authored in late 2016 and early 2017; and (2) hundreds of pages of additional medical evidence had been submitted since then. However, when the ALJ asked if the record was complete, Plaintiff's counsel responded that it was. AR 44. It is the Plaintiff's burden to present evidence of disability. *Tidwell v. Apfel*, 161 F.3d 599, 600 (9th Cir. 1999); 20 C.F.R § 404.1512(a) ("in general, you have to prove to us that you are blind or disabled). However, Plaintiff failed to submit additional medical source opinions describing how these new medical records impacted her inability to work. Plaintiff waived her duty-to-develop argument when she did not request additional medical source opinions when given the opportunity to do so.

Waiver aside, the ALJ did not violate any duty to develop the record. While an ALJ has an independent duty to fully and fairly develop the record, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

(9th Cir. 2001), this duty is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  Plaintiff suggests that the record was "ambiguous" because the ALJ partially discounted medical opinions on the ground that they pre-dated other medical evidence that "more accurately reflects the current state of the claimant's impairments." AR 30.  But courts in this Circuit have determined that "[t]he mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." *Stivers v. Saul*, 2021 WL 1193794, at *8 (E.D. Cal. Mar. 30, 2021) (citing *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by ALJ and were not inconsistent with RFC); *see also Findley*, 2019 WL 4072364, at *6 (rejecting plaintiff's argument that ALJ erred by failing to obtain additional medical source opinions, finding that "the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record").  Again, it is plaintiff's—not the ALJ's—burden to present evidence of disability.  If Plaintiff believed that the new evidence of record supported her claim, it was her burden to supplement the record with additional medical source opinions interpreting the evidence as such.  And contrary to Plaintiff's assertion, the ALJ did not entirely discount all of the medical opinions of the record, such that "no medical opinion" was used to determine Plaintiff's RFC. Rather, he gave some weight to Dr. Holland's and the agency opinions and considered the evidence that was submitted after those opinions were authored.  While the ALJ found that the agency opinions were "fact diminished" by more recent medical evidence, he discussed that evidence and created an RFC with more physical limitations than those discussed in the agency opinions.  Nothing in the record or the ALJ's opinion indicate that the ALJ's duty to develop was triggered by the entry of new evidence.

As to Plaintiff's contention that the ALJ should not have evaluated the new medical evidence without the benefit of new medical opinions interpreting it, the Court is similarly unpersuaded. Plaintiff points to new evidence that she "underwent shoulder surgery, obtained updated objective imaging of her cervical spine and left elbow, received a new diagnosis of left elbow epicondylitis,

and underwent several rounds of injection therapy for her back impairments that were not wholly successful in alleviating her symptoms." ECF No. 36 at 4 (citations omitted). Because the ALJ did not request a consultative examination[14] or some other medical opinion, the Plaintiff contends that any reliance on this new evidence was in error.

Plaintiff's argument is misplaced. "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1537(d)(2). ALJs are required to base their RFC finding "on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). The ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Commissioner Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 016. 1019 (9th Cir. 1992) (ALJ did not err when relying on a physician's progress notes that contradicted medical opinion); *Brown-Hunter*, 806 F.3d at 492 ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."). The ALJ did not err by interpreting the new evidence without the benefit of additional medical opinions.[15]

Lastly, Plaintiff contends that the ALJ "played doctor" by interpreting x-rays and psychological test results. The Court finds that the ALJ did neither of those things. Rather, he relied on medical findings reported by clinicians throughout the record. It is not outside of the ALJ's

---

[14]     Plaintiff cites 20 C.F.R. §§ 404.1519a(b)(4); 416.919a(b)(4) to support her contention that the ALJ's failure to order a consultative examination was in error. She claims the regulations allow an ALJ to "purchase a consultative examination" if "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." The regulation is permissive—it merely informs claimants that the Commissioner might order a consultative examination. The regulation in no way *requires* the Commissioner do so. Further, Plaintiff's case does not invoke the regulation she cites because the severity of Plaintiff's impairments were established. The ALJ determined Plaintiff had severe impairments, including degenerative disc disease of the SI joint; degenerative disc disease; fibromyalgia; lupus, status-post remote intestinal surgery; and left shoulder rotator cuff tear, status post-surgical repair. In short, the ALJ was able to determine the severity of Plaintiff's physical ailments based on the medical opinions of record *and* the medical evidence submitted after 2017, which he cited when determining that her physical impairments were severe. The ALJ did not err by failing to obtain an examination under this regulation.
[15]     While the Court has found that the ALJ did not adequately support his decision to reject Dr. Cruvant's testimony, it was not because he did not have the benefit of additional medical opinions. Rather, the Court reached its decision because the ALJ did not sufficiently explain how the new evidence discounted Dr. Cruvant's opinions. If the ALJ had adequately summarized the record before him and stated his interpretations thereof when discounting Dr. Cruvant's opinions, he may not have erred.

purview to note that a clinician found Plaintiff's x-rays to show only "mild" or "moderate" degeneration or other similar limitations. Indeed, that is exactly what the ALJ must do to determine whether medical evidence supports a medical source opinion or supports a particular RFC. The ALJ also did not err by interpreting Plaintiff's psychological records to show that "despite her depressed mood," there was no evidence in the new records of "disordered thought process, cognitive dysfunction, or intellectual deficits." AR 29, 24. The ALJ noted that the claimant is consistently fully oriented and cognitively intact, and that most recent examinations showed normal cognition. AR 28, 29. The ALJ is entitled to rely on objective clinical findings when determining a proper RFC, and that is all the ALJ did here. For all of the reasons above, the Court finds that the ALJ did not err by failing to develop the record by soliciting additional medical opinions to interpret new medical records.

### 3. The ALJ did not err by finding Plaintiff did not have a severe mental impairment at step two.

Plaintiff contends that the ALJ committed reversible error at step two when he determined that Plaintiff did not suffer from any severe mental impairments. "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987)). As Plaintiff contends, the step-two inquiry is "a de minimus screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). Once a claimant prevails at step two, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the ALJ proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the claimant's ability to work. *See* 42 U.S.C. § 423(d)(2)(B); *Buck*, 869 F.3d at 1049 ("The RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not."). Thus, when an ALJ finds at least one severe impairment and proceeds to consider evidence of limitations posed by all of a claimant's impairments at step four, there is no reversible error for a failure to find additional severe impairments at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Buck*, 869

F.3d at 1049 (where step two was decided in plaintiff's favor, he could not have been prejudiced and any error was therefore harmless).

Here, the ALJ decided step two in Plaintiff's favor, finding that she had severe impairments of degenerative joint disease of the SI joint, degenerative disc disease, fibromyalgia, lupus, and left shoulder rotator cuff tear.  AR 22.  However, he found that because Plaintiff's mental impairments cause no more than mild limitation in any of the four mental functioning areas contained in the Listing of Impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1), they were "nonsevere."  AR 24.  The ALJ determined that Plaintiff's records indicated that Plaintiff had no limitation in the first functional area of "understanding, remembering or applying information," no limitation in the second functional area of "interacting with others," only mild limitation in "concentrating, persisting, or maintaining pace," and no limitation in "adapting or managing oneself."  AR 23–24.  In making this finding, the ALJ considered the evidence of Plaintiff's mental impairments, including Dr. Holland's 2016 opinion and extensive mental health treatment records.  When determining that Plaintiff had no limitations in interacting with others, the ALJ rejected Dr. Holland's opinion that Plaintiff could not interact with the general public, noting that such an assumption "was solely based on claimant's subjective complaints."  AR 23.  He further noted that "throughout the record she is cooperative and pleasant, and there is no persuasive evidence to show that she could not interact with the public." *Id*.  Later in his step two analysis, the ALJ noted that, while Plaintiff "has alleged significant social dysfunction that largely involves anxiety around others and social isolation . . . the claimant exhibits no significant social deficits when interacting with treating and examining sources . . . and is capable of effectively conveying information in a socially appropriate manner with no evidence of communicative deficits."  AR 24.

The ALJ proceeded to steps three and four of the disability analysis finding that Plaintiff could perform moderate work with certain limitations.  The ALJ discussed the psychiatric medical evidence in the record, noting that Plaintiff's mental status was "relatively stable" from September 2017 to May 2018, despite anxiety and depression complaints. AR 28.  He noted the many findings indicating normal mental status, fair judgment, intact memory, and appropriate thought process.  AR 29.  He discussed treatment notes from November 2018 to January 2019 noting normal exam

findings and "normal cognition despite her depressed mood." *Id*. He also discussed her daily activities, noting that they are inconsistent with the severity of impairments Plaintiff alleges. The ALJ noted that Plaintiff is "able to engage in a number of activities, including performing some chores, shopping, socializing, [and] going out alone, that far exceed the allegations." *Id*. He also noted that Plaintiff is "capable of fine motor function and maintains enough attention to be able to follow a television show, or read." *Id*. After considering this evidence, the ALJ added a limitation to "simple, repetitive tasks, and reasoning level 2–3" to account for Plaintiff's pain complaints in combination with her non-severe mental issues. AR 22, 23. Thus, the determination that Plaintiff's anxiety, depression, and PTSD were non-severe at step two is inconsequential, and any error by the ALJ at step two would have been harmless.

Plaintiff appears to contend instead that the ALJ's failure to find any limitations with respect to her ability to interact with others was in error. She contends that any error at step two was harmful because "the ALJ did not question the VE regarding any social interactions." ECF No. 30 at 25. The Court assumes this focus stems from Dr. Holland's opinion that Plaintiff cannot interact with the general public—an opinion that the state agency physicians adopted as not inconsistent with the medical evidence. But Plaintiff does not challenge the ALJ's stated reasons for discounting Dr. Holland's opinion. Instead, she appears to contend that Dr. Holland's opinion should have been rejected entirely as "stale" because it was submitted before the state agency physicians' allegedly "stale" opinions. The Court rejects this argument for the same reasons it rejected these arguments against the state agency physician opinions.

Plaintiff attempts to salvage this argument by contending that the ALJ erred by failing to discuss specific findings in Plaintiff's psychiatric treatment notes, in which "Plaintiff was noted to be soft-spoken, withdrawn, have abnormal mood or affect, persecutory and paranoid delusions, easily distractible concentration, and hallucinations." ECF No. 30 at 24. Plaintiff also takes issue with the ALJ's discussion of her psychiatric medications, noting that she was prescribed far more medication for her mental impairments than the ALJ acknowledged. *Id*. Plaintiff contends that this "mischaracterization" of the record means his step two determination was made in error.

1    Plaintiff fails to connect the ALJ's supposed mischaracterization of evidence to the harm she

2    claims resulted from that error: the ALJ's failure to add social-interaction limitations to her RFC and

3    question the VE with hypotheticals including the same.  Despite Plaintiff's references to specific

4    treatment notes, she does not take issue with the myriad of convincing reasons the ALJ gave when

5    reaching the conclusion that Plaintiff was not limited in her ability to interact with the public.  As

6    noted above, the ALJ gave several distinct reasons for rejecting the opinion that Plaintiff was limited

7    in her ability to interact with others.  "When the evidence before the ALJ is subject to more than one

8    rational interpretation, we must defer to the ALJ's conclusion."  *Batson*, 359 F.3d at 1198 (citing

9    *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  The Court defers to the ALJ's

10   determination that the record did not support any limitations to her ability to interact with others,

11   based on his findings that her interaction with her physicians indicated no significant issues, that her

12   daily activities were inconsistent with her alleged symptoms, and that she is capable of

13   communicating effectively.

14       In short, any error at step two was harmless because the ALJ carefully considered the

15   evidence of Plaintiff's mental impairments and incorporated mild limitations to concentration in the

16   RFC.  His determination that Plaintiff did not have social-interaction limitations is supported by

17   substantial evidence.

18   …

19

20

21

22

23

24

25

26

27

28

## IV. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 30) is GRANTED in part, and Defendant's Cross-Motion to Affirm (ECF No. 34) is DENIED in part.

IT IS FURTHER ORDERED that this matter is remanded for further administrative proceedings consistent with this Order. On remand, the ALJ should reevaluate whether specific and legitimate reasons exist to discount Dr. Cruvant's opinion, particularly in light of the medical evidence submitted after 2017.

Dated this 2nd day of July, 2021

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE